IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE A. MITCHELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-20-3091 |
| LT. JEREMY CRITES,[1] | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Lieutenant Jeremy Crites' Motion to Dismiss Plaintiff's Complaint or, Alternatively, for Summary Judgment (ECF No. 15).[2] The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons discussed below, the Court will grant the Motion.

### I. BACKGROUND

**A. Factual Background**

On Wednesday, March 18, 2020, the administration at North Branch Correctional Institution ("NBCI") authorized a mass search of Housing Unit No. 1 in response to staff and inmate complaints about an increase in smoke on the tiers. (Crites Decl. ¶ 5, ECF 15-4; Bradley Decl. Attachs. at 3–5,[3] ECF No. 15-5). The search included Cell No. 2 of

---

[1] The Clerk shall add Defendant's first name to the docket.
[2] Also pending before the Court is Plaintiff Wayne A. Mitchell's Motion to Dismiss Defendant's Motion for Summary Judgment (ECF No. 18), which the Court construes as an Opposition. Because the Court will grant Crites' dispositive Motion, Mitchell's Motion will be denied as moot.
[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Housing Unit No. 1, which was then occupied by Mitchell and his cellmate. (Crites Decl. ¶ 6).

Mitchell claims that Crites "negligently" authorized the mass cell search with the intention of finding contraband. (Compl. at 3, ECF No. 1). Mitchell contends the search was needless and performed recklessly in light of the risks posed by the coronavirus disease 2019 ("COVID-19") pandemic and violated his Eighth and Fourteenth Amendment rights. (Id.). He claims that Crites violated his right to adequate medical care because he was not provided personal protective equipment ("PPE"), such as a mask and face shield, during the search. (Id. at 4).

Mitchell alleges that Crites had "actual constructive knowledge of the damages that a mass search could pose to inmates and staff" because the warden and supervisory staff were briefed about the severity of COVID-19 during mandatory roll call, and because prisons were "named hotspots for outbreaks." (Id. at 4–5). Mitchell asserts the search failed to comply with "mandates" issued by Maryland Governor Larry Hogan on March 5, 2020, as well as directives issued by the Warden of NBCI and the Centers for Disease Control requiring prison facilities to modify search protocols, introduce social distancing, and provide personal protective gear to inmates and staff. (Id.). Mitchell requests monetary damages and injunctive relief "until [the] issue is resolved," transfer to an institution outside of Cumberland, Maryland, and for all social distancing mandates to be enforced by NBCI administration and custody staff. (Id. at 5).

In his Motion to Dismiss Defendant's Motion for Summary Judgment, Mitchell states that on March 18, 2020, correctional staff entered his small cell so that they were

within arm's reach of him, removed his handcuffs, and instructed him to grab his buttocks, lift his genitals for inspection, and to use his hands to run along the gum line of his mouth while an officer inspected his mouth with a flashlight. (Pl.'s Mot. Dismiss Def.'s Mot. Summ. J. Alt. Summ. J. Pl. ["Opp'n"] at 4, ECF No. 18).[4] Neither the correctional officers nor Mitchell wore a facial covering. (Id.). Mitchell states that he was not provided an opportunity to wash his hands. (Id. at 7). After the inspection, Mitchell was placed in a chair alongside ten to twelve other inmates and correctional staff. (Id. at 4). He acknowledges that staff wore fabric or leather gloves during the search and the inspection, which included handling every item in his cell, including towels, food, clothing, and linen. (Id.). At the time of the search, NBCI was not conducting any testing for the COVID-19 virus. (Id. at 7).

Importantly, Mitchell does not allege in the Complaint that he contracted COVID-19 as a result of the search. Although he asserts in his Motion that he suffers ongoing severe migraines, muscle aches, and fatigue, he does not provide any details to suggest they are COVID-19 related or consequent to the search. (Id. at 8).[5] Mitchell argues that because he

---

[4] Courts generally will not permit plaintiffs to revise their pleadings through their briefs. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) ("[Plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), aff'd, 141 F.3d 1162 (4th Cir. 1998). However, given Mitchell's pro se status and the Court's decision to review Crites' Motion as a motion for summary judgment, the Court will consider these additional allegations as though they had been asserted in an affidavit accompanying Mitchell's Motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (internal quotation marks and citations omitted)).

[5] Mitchell was seen by medical providers on March 26, 2020. (Mitchell Medical Rs. ["Med. Rs."] at 2–4, ECF No. 15-6). The medical record of that visit shows Mitchell voiced

3

was not tested until months after the cell search was conducted, transmission of the virus would not have been discovered. (Id.). He asserts that the origin of the smoke on the tier "should have been easily narrowed down to a more specific location" to avoid conducting a mass search during a "state of emergency due to a deadly respiratory disease." (Id. at 5).

On March 5, 2020, Maryland Governor Larry Hogan issued a state of emergency proclamation in response to the COVID-19 pandemic. (State of Md. Coronavirus Executive Order Excerpts ["Md. Orders"] at 1–2, ECF No. 15-3). On March 12, 2020, Governor Hogan issued an order limiting large public gatherings to 250 people. (Id. at 3–5). On March 16, 2020, Governor Hogan revised the March 12, 2020 order to limit large public gatherings to fifty people. (Id. at 6–9). On March 31, 2020, the Secretary of the Department of Public Safety and Correctional Services issued a directive to provide standards for using PPE, and afterwards all institutional staff were provided PPE. (Crites Decl. ¶ 9; Bradley Decl. Attachs. at 6–11). On April 15, 2020, Governor Hogan issued Executive Order No. 20-04-15-01, requiring for the first time that members of the public wear face coverings when riding public transportation and in retail or food service establishments. (Md. Orders at 14–17).

**B.     Procedural History**

The Court received Mitchell's Complaint on October 23, 2020. (ECF No. 1). Although the Complaint does not expressly identify a cause of action, it appears to

---

no complaints about COVID-19 or symptoms associated with the virus. (Id. at 2, 4). Mitchell's vital signs were normal, there was no sign of labored breathing, and his hypertension was "benign." (Id. at 4). On June 16, 2020, and November 19, 2020, Mitchell tested negative for COVID-19. (Id. at 5, 7).

4

articulate claims against Crites for negligence and for violations of the Eighth and Fourteenth Amendments for wrongly authorizing a cell search that could have exposed Mitchell to COVID-19. (Id. at 3). Mitchell seeks monetary damages and injunctive relief. (Id. at 3, 5).

On February 18, 2021, Crites filed a Motion to Dismiss Plaintiff's Complaint or, Alternatively, for Summary Judgment (ECF No. 15). The Court received Mitchell's Opposition, styled as a Motion to Dismiss Defendant's Motion for Summary Judgment (ECF No. 18), on March 17, 2021. Crites did not file a Reply.

## II. DISCUSSION

### A. Standard of Review

#### 1. Conversion

Crites styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d)[.]" Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020) (citation omitted). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (citation omitted). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md.

2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Mitchell was on notice that the Court might resolve the Motion under Rule 56 because Crites styled his Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In

addition, the Clerk informed Mitchell about the Motion and the need to file an opposition. (See Rule 12/56 Letter, ECF Nos. 16). Mitchell filed an Opposition but did not include a request for more time to conduct discovery. (See ECF No. 18). Because the Court will consider documents outside of Mitchell's Complaint in resolving Crites' Motion, the Court will treat the Motion as one for summary judgment.

2. **Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.      Analysis**

Crites moves for summary judgment in his favor on several grounds: (1) Eleventh Amendment immunity; (2) the Complaint does not allege claims of unconstitutional

9

conduct; and (3) violation of Crites' own policies, procedures, and rules does not provide a basis for a due process violation.[6] The Court addresses each argument in turn.

### 1. Eleventh Amendment

The Eleventh Amendment doctrine of sovereign immunity generally precludes the recovery of monetary damages from state officials acting in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state:

> First, Congress may abrogate the States Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. . . . Third, [a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court.

Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 249 (4th Cir. 2012). "State officers sued in their official capacity are entitled to Eleventh Amendment immunity because such a suit 'is not a suit against the official but rather is a suit against the official's office.'" Just Puppies, Inc. v. Frosh, 438 F.Supp.3d 448, 482 (D.Md. 2020) (quoting Will, 491 U.S. at 70). "Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983," and Maryland "has not waived its immunity under the Eleventh Amendment to suit in federal court." Pevia v. Hogan, 443 F.Supp.3d 612, 632 (D.Md.

---

[6] Crites also argues that he is entitled to qualified immunity. Because the Court concludes that Mitchell's constitutional claims are subject to dismissal on the merits, the Court need not consider Crites' qualified immunity defense.

2020). Accordingly, the claims for monetary damages against Crites in his official capacity must be dismissed.

### 2. Eighth Amendment Claims

Mitchell filed this lawsuit pursuant to 42 U.S.C. § 1983, which states that any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who deprives a United States citizen of any constitutional right may be liable in a suit for money damages. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Negligence is not actionable under § 1983. See Davidson v. Cannon, 474 U.S. 344, 347–48 (1986); see also Pierce v. Davis, 820 F.2d 1220 (4th Cir. 1987) ("[I]t is clear that negligence alone is an insufficient basis for individual liability under 42 U.S.C. § 1983[.]" (citations omitted)); Grayson v. Peed, 195 F.3d 692, 695–96 (4th Cir. 1999) ("[T]he Constitution is designed to deal with deprivation of rights, not errors in judgment, even though such errors may have unfortunate consequences.").

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; Gregg v. Georgia, 428 U.S. 153, 173 (1976). Liberally construing Mitchell's allegations, the Court will consider the Complaint to present Eighth Amendment claims based on Crites' alleged failure to protect Mitchell from harm by exposing him to COVID-19 and by providing inadequate medical care.

The Eighth Amendment requires prison officials to maintain "humane conditions of confinement," including taking "reasonable measures to guarantee the safety of the inmates." Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016). An Eighth Amendment claim requires a plaintiff to establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and objectively that the injury or deprivation inflicted was serious enough to constitute a violation. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). A prisoner must demonstrate that the actions of prison officials amounted to "deliberate indifference" to the inmate's health and safety. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (establishing deliberate indifference as the standard for Eighth Amendment inadequate medical care claims); Helling v. McKinney, 509 U.S. 25, 32–34 (1993) (applying the deliberate indifference standard to a claim that a communicable disease threatened inmates' health and safety). To establish deliberate indifference, a plaintiff must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the defendant actually drew the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Mitchell does not allege that he is elderly or that he has any preexisting medical conditions that rendered him particularly vulnerable to COVID-19, much less that Crites was aware of such risk. Mitchell's conclusory assertion that Crites had "actual constructive knowledge of the damages" because the "warden and supervisory staff were briefed about the severity of COVID-19 during mandatory roll call," (Compl. at 4), is insufficient to

demonstrate that Crites knew of and disregarded a substantial risk of harm to Mitchell in particular.

Because subjective awareness is an essential element of the prima facie case for deliberate indifference, it is generally not enough to aver conclusively that the defendant had the requisite mental state; rather, a well-pleaded complaint must contain enough plausible facts for a court to infer that the defendant possessed the applicable degree of awareness or knowledge. See Owens v. Jefferson, No. CIV.A. 0:09-2888, 2010 WL 3170148, at *5 (D.S.C. May 4, 2010) ("The United States Supreme Court has . . . made clear that when a plaintiff alleges a civil rights claim requiring him to establish a defendant's state of mind as an element of his claim, he must do so with specific factual allegations, not conclusory statements." (citation omitted)), report and recommendation adopted, 2010 WL 3170073 (D.S.C. Aug. 10, 2010), aff'd, 404 F.App'x 781 (4th Cir. 2010) (per curiam); cf. Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001) (finding that using "conclusory legal terms" like "'deliberate indifference,' 'malicious,' 'outrageous,' and 'wanton' when describing the conduct of the [defendants]" "does not insulate a complaint from dismissal").

In the context of the COVID-19 pandemic, courts have found that a plaintiff "must provide more than generalized allegations that the [defendants] ha[ve] not done enough to control the spread" of COVID-19. Blackwell v. Covello, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D.Cal. Mar. 10, 2021); see also Hope v. Warden, 972 F.3d 310, 330 (3rd Cir. 2020) (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in

order to comply with constitutional mandates). Other courts that have considered allegations similar to those presented in the Complaint have concluded that they do not support a claim of deliberate indifference. See, e.g., Wylie v. Bonner, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4–6 (W.D.Tenn. Jan. 26, 2021) (finding that inmate failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); Kesling v. Tewalt, 476 F.Supp.3d 1077, 1086–88 (D.Idaho 2020) (noting that "[a]t first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus" and "it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited"); McKissic v. Barr, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D.Mich. June 29, 2020) (finding that an inmate's "speculation about the mere possibility that he will become infected by the virus does not rise to the level of an Eighth Amendment violation").

In sum, Mitchell's conclusory assertions are insufficient to infer a plausible Eighth Amendment claim against Crites. Accordingly, his Eighth Amendment failure to protect and inadequate medical care claims will be dismissed.

### 3. Fourteenth Amendment Claims

Mitchell does not articulate the basis for his allegation that Crites violated his Fourteenth Amendment rights. Liberally construing the Complaint, the Court presumes that Mitchell intends to allege that Crites violated his rights under the Due Process Clause by violating policies and procedures relating to COVID-19. Even if he were correct in that assertion, however, a mere violation of state law or regulation does not amount to a due

14

process claim. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Clark v. Link, 855 F.2d 156, 163 (4th Cir. 1988) ("[A] section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes or qualify as a common law tort."). Accordingly, Mitchell's Fourteenth Amendment claim will be dismissed.

### 4. Negligence Claims

Though a federal court has discretion to retain supplemental jurisdiction over state law claims that are related to dismissed federal claims, see 28 U.S.C. § 1367(c), it generally should not continue to exercise this jurisdiction "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Thus, to the extent Mitchell intends to raise a state law claim for negligence, the claim will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Crites' Motion to Dismiss Plaintiff's Complaint or, Alternatively, for Summary Judgment (ECF No. 15), which it construes as a motion for summary judgment. A separate Order follows.

Entered this 13th day of July, 2021.

                                                     /s/
                                       George L. Russell, III
                                       United States District Judge